IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY J. DORE,[1]

      Plaintiff,    No. CIV S-08-3131 DAD

    vs.

MICHAEL J. ASTRUE,    ORDER
Commissioner of Social Security,

      Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security (the Commissioner) is reversed, and the matter is remanded with the direction to award benefits.

/////

/////

---

[1] Plaintiff's first name is spelled "Jeffrey" in plaintiff's and defendant's court filings. In some documents in the administrative record, including the administrative decisions at all levels and some medical records, plaintiff's name is spelled "Jeffery." (See tr. at 6, 14, 17, 39, 49, 127-30, 138-39, 146-57.) Plaintiff's application for SSI reflects that he has used both "Jeffery" and "Jeffrey." (Tr. at 262.) The court has adopted the spelling reflected in the parties' court filings.

1

**PROCEDURAL BACKGROUND**

On June 24, 2005, plaintiff applied for disability benefits under Title II of the Social Security Act (the Act) and for Supplemental Security Income (SSI) benefits under Title XVI of the Act, alleging that he became disabled on June 7, 2004. (Transcript (Tr.) at 59-68, 261-65.) Plaintiff claimed disability based on back pain and restrictions caused by a compression fracture at L1, a bulging disk at L4, irritated facet nerves, and arthritis on vertebrae. (Tr. at 59-60.) Plaintiff's application was denied by the agency initially on December 13, 2005, and upon reconsideration on April 19, 2006. (Tr. at 37-43, 47, 49-54, 266-78.) A hearing was held before an Administrative Law Judge (ALJ) on August 8, 2007. (Tr. at 55, 293-330.) Plaintiff was represented at the hearing by an attorney and testified, as did a vocational expert. (Tr. at 293-94.) In a decision issued on September 27, 2007, the ALJ found plaintiff not disabled. (Tr. at 17-27.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since June 7, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: back pain, right leg racidulopoathy [sic], GERD, depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work. He can lift/carry push/pull 20 pounds occasionally and lift/carry push/pull 10 pounds frequently. He can sit 8 hours in an 8 hour day with normal breaks, and with sit/stand options at will and leaving work stations. He can stand/walk 6 hours in an 8 hour workday with normal breaks and no prolonged walking or standing. He cannot climb ladders, ropes, or scaffolds. He can occasionally stoop, crouch, crawl, and kneel.

/////

      6. Tom Reed, an impartial vocational expert, testified as to the vocational aspects of this case.  Upon review of the claimant's work history in the file and after hearing the claimant's testimony concerning his past relevant work, he testified that the claimant has past relevant work as a teacher, D.O.T. 092-227.010 specific vocational preparation time (SVP) of 7, light work; tutor, D.O.T. 099-277.034 SVP 7, light work; and computer analyst, D.O.T. 199-267.014 SVP 7, sedentary work.

      7. The claimant has not been under a disability, as defined in the Social Security Act, from June 7, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. at 19-27.)

On October 30, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby making that decision the final decision of the Commissioner.  (Tr. at 6-10, 13.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on December 23, 2008.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

/////

# APPLICATION

Plaintiff advances three arguments in his motion for summary judgment. First, plaintiff asserts that the ALJ rejected the opinions of the treating physician, the psychiatric consultative examiner, and the certified work capacity evaluator without a legitimate basis for so doing. Second, plaintiff contends that the ALJ rejected plaintiff's own testimony and third-party statements regarding his pain and functional limitations without providing clear and convincing reasons for so doing. Third, plaintiff argues that the ALJ failed to properly assess plaintiff's residual functional capacity (RFC) and failed to pose an adequate hypothetical question to the vocational expert, as a result of which the ALJ erroneously found plaintiff capable of performing his past relevant work as a school teacher, computer analyst, or tutor. The court addresses each argument below.

## I.     Whether the ALJ Erred in Rejecting Medical Opinions

It is well established that the weight to be given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester, 81 F.3d at 830. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Id. A treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990). Of course, the ALJ need not give controlling weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830 (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so

1  doing." Lester, 81 F.3d at 830 (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).
2  If a treating professional's opinion is contradicted by an examining professional's opinion that is
3  supported by different, independent clinical findings, the ALJ may resolve the conflict. Andrews
4  v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751). The opinion
5  of a non-examining professional, without other evidence, is an insufficient basis for rejecting the
6  opinion of either a treating or examining professional. Lester, 81 F.3d at 831.

7  Plaintiff asserts that the ALJ improperly rejected the opinions of three medical
8  sources: (1) Jack Kimple, M.D., of Redding Family Medical Group, who had been plaintiff's
9  primary care physician for seven years prior to November 30, 2004, the date on which Dr.
10 Kimple wrote a letter expressing his opinion of plaintiff's functional abilities; (2) Joanne M.
11 Roux, M.D., a psychiatric consultative examiner who performed a psychiatric examination of
12 plaintiff on September 26, 2005; and (3) James Girt, a physical therapist and certified work
13 capacity evaluator who examined and tested plaintiff on July 18, 2006 and wrote a report.

14 Dr. Kimple stated in his November 30, 2004 opinion that during the seven years
15 he had treated him, plaintiff had intermittent bouts of lumbar pain, had been evaluated by a
16 neurosurgeon who felt that he was not a surgical candidate, and underwent epidural steroid
17 injections that did not improve the situation. (Tr. at 126.) It was Dr. Kimple's understanding
18 that plaintiff was currently taking strong narcotic analgesics, and he opined that these
19 medications would render plaintiff unfit for duty as a full-time teacher, that his chronic waxing
20 and waning lumbar pain would require restrictions, "including no bending or lifting whatsoever,"
21 that "[h]e must be able to get up and walk around about every 30 minutes," that "[p]rolonged
22 standing more than 30-60 minutes at a time is not advisable," and that "climbing, crawling, and
23 prolonged squatting would be prohibited." (Tr. at 126.) Dr. Kimple concluded with his opinion
24 that plaintiff's "combination of disabilities preclude him from being employed as a full-time
25 school teacher." (Tr. at 126.) Plaintiff asserts that the ALJ acknowledged this opinion but failed
26 to offer any explanation for rejecting the limitations assessed by Dr. Kimple. (Tr. at 21.)

Dr. Roux, Board Certified and Diplomate, American Board of Psychiatry, interviewed plaintiff on September 26, 2005. (Tr. at 174-82.) She noted Primary Care Notes recorded by Debra Lupeika, M.D., dated May 27, 2005 and July 12, 2005. Although those notes focus on plaintiff's pain and other physical health problems, they also note his problems with depression. (Tr. at 174.) Plaintiff's chief complaint at the interview with Dr. Roux was "depression." He reported to Dr. Roux that he had suffered problems with depression off and on for the past several years and attributed these problems to his chronic/severe back pain and subsequent inability to work or engage in other previously enjoyed activities. (Tr. at 174-75.) Plaintiff stated that his ability to do household chores and run errands is limited to light duty activities due to physical pain and he no longer engages in the very physical sports, such as rock climbing, which he used to enjoy, but instead is limited to playing video games and occasionally going fishing, both of which he has had to limit because of his pain. (Tr. at 177-78.) He described a very limited typical day. (Tr. at 178.) Dr. Roux noted that plaintiff put forth what appeared to be a good effort in the tasks and questions she asked of him, and came across as being genuine and truthful. (Tr. at 178.) Dr. Roux's diagnostic impression was "[d]epressive disorder, not otherwise specified (appears to be a combination of pain-mediated depression, and chronic 'reactive' depression); currently mild." (Tr. at 180.) Dr. Roux noted the following psychosocial stressors over the past year: chronic pain and associated physical problems; inability to work or engage in previously enjoyed activities; and fixed income. (Tr. at 181.) She found that plaintiff's reported history, the records reviewed, and her observed mental status findings were consistent with her diagnoses and that plaintiff did not appear to be exaggerating or malingering any psychiatric symptoms. She observed that, despite being on Effexor, he continued to demonstrate some depression symptoms, which, in her opinion, when combined with his chronic pain, "could have some negative impact upon his ability to obtain or maintain gainful employment." (Tr. at 181.) She noted that plaintiff himself believed that "the only reason he can't work is because of his pain" and, were it not for his pain, he would still be

working because he loved his job, and he wouldn't have a problem with depression. (Tr. at 181.) Based on her examination, it was Dr. Roux's opinion that plaintiff was mildly impaired in his abilities to (1) carry out detailed and complex instructions; (2) maintain concentration and attention, persistence, and pace; (3) adapt to the stresses common to a normal work environment; (4) maintain regular attendance in the work place and perform work activities on a consistent basis; and (5) perform work activities without special or additional supervision. (Tr. at 181-82.)

Plaintiff contends that the ALJ acknowledged Dr. Roux's assessed limitations but incorrectly concluded that Dr. Roux "did not feel that the claimant's psychiatric condition was keeping him from being able to work." (Tr. at 23.) Plaintiff cites Dr. Roux's statements that plaintiff's depression and pain could have a negative impact on "his ability to obtain or maintain gainful employment" and notes that it was plaintiff himself who attributed his inability to work to pain alone. (Tr. at 181.) Thus, plaintiff argues, the ALJ's only articulated reason for rejecting Dr. Roux's assessed limitations is controverted by the record.

James Girt, P.T. (Physical Therapist), C.W.C.E. (Certified Work Capacity Evaluator), examined and tested plaintiff over the course of three and a half hours on July 18, 2006. (Tr. at 255-60.) Mr. Girt spent thirty additional minutes reviewing available medical records prior to his assessment of plaintiff's residual functional capacity. (Tr. at 255.) Mr. Girt noted that plaintiff changed positions almost continuously throughout the evaluation. Based on his examination of plaintiff and extensive testing, it was Mr. Girt's opinion that plaintiff was limited to sitting one hour per eight hours or ten minutes continuously; standing one hour per eight hours or thirty minutes continuously; and walking one hour in an eight-hour day or twenty minutes continuously. (Tr. at 255.) Mr. Girt found that bending and squatting would be difficult for plaintiff. (Tr. at 256.) He found that plaintiff's pre-test pain level was 4/10 (somewhat strong), and his post-test pain level was 7/10 (very strong). He found it "obvious that pain was a limiting factor during the tested activities" and commented that "[c]onsistent and appropriate pain behaviors were observed." (Tr. at 256.) It was Mr. Girt's professional opinion that,

8

> [e]ven if allowed to alternate sitting and standing postures as tolerated, it appears as though Jeff can not perform work at a Sedentary Physical Demand Level more than on a part-time basis, not exceeding two hours per day.

(Tr. at 256.)

The ALJ gave "very little weight" to Mr. Girt's assessment on the grounds that he "has not provided diagnostic evidence to support his opinion" and his opinion was "far too restrictive" and "not consistent with the medical record as a whole." (Tr. at 24-25.) Plaintiff argues that Mr. Girt's opinions are consistent with Dr. Kimple's opinion as well as plaintiff's own testimony. In latter regard, plaintiff testified that he was able to sit for only twenty to thirty minutes at a time and then had to get up and either walk or, if he was having a bad day, lie down. (Tr. at 314.) He testified that he was not taking any prescription medication because the medications were not beneficial to him and he had decided to manage his pain with Tylenol, biofeedback, and the assistance of friends. (Tr. at 313.) In a pain questionnaire completed in 2005, plaintiff had reported that pain medicine provided "[s]ome pain relief but no relief of stabbing pains." (Tr. at 77.) He explained that "narcotics cause me an uncomfortable loss of my mental faculties, as well as causing dependency issues that I fear. I therefor [sic] take as little medicine as possible." (Tr. at 78.) He explained further that he used other means of relieving pain, including biofeedback to relax and stop cramping pains, as well as heat and ice packs to cope with pain caused by activity, and he engaged in very few activities outside the house. (Tr. at 78.) He told Dr. Lupeika in October 2006 that he had Norco left over and that he did not take it often because it caused him to get "too depressed and goofy." (Tr. at 286-87.) Plaintiff contends that the ALJ's stated reasons for rejecting Mr. Girt's opinions are thus contradicted by the record and lack merit.

Plaintiff notes that the ALJ also rejected the medical report and diagnoses of Robert Hansen, M.D., who was plaintiff's treating pain specialist beginning on June 25, 2004. Dr. Hansen's diagnoses included lumbar degenerative disk disease with bulge at L4-L5 and facet

joint syndrome.  (Tr. at 158-61.)  However, the ALJ rejected the report because

> Dr. Hansen has not provided MRI or x-rays showing disc bulge. Physical exam showed sensation was intact and normal muscle tone.  Thus, the undersigned gives little weight to Dr. Hansen report because he ha[s] not provided the diagnostic findings to substantiate disc bulge.  Furthermore, it is inconsistent with the medical evidence as whole.

(Tr. at 22.)  Plaintiff points out that Dr. Hansen's initial evaluation refers to a whole body bone scan on February 28, 2001, an MRI of the lumbar spine from November 11, 1998 showing minimal annular bulge at L4-L5, and December 1998 lumbar spine plain films showing slight narrowing in the L4-L5 disk space and slight anterior wedging on the L1 vertebral body.  (Tr. at 160.)  Plaintiff argues that the ALJ should have credited Dr. Hansen's professional opinion regarding MRI findings based on the diagnostic data cited in the report.  Plaintiff also cites Dr. Hansen's treatment records reflecting that plaintiff experienced pain during physical examinations in 2004 and 2005 along the spinous processes at L3, L4, L5, and S1 and along the facets on the left at L4, L5, and S1, as well as decreased range of motion secondary to pain and a positive straight leg test on the left, contradicting the ALJ's suggestion that Dr. Hansen's findings were limited to "normal muscle tone." (Tr. at 139, 141, 144, 147, 150, 153, 156,  160.)  Plaintiff argues that the alleged inconsistency with "the medical evidence as a whole" is not supported by the record, since Dr. Hansen's treatment of plaintiff with Methadone, a strong narcotic used to treat severe pain, was consistent with the restrictive limitations assessed by Dr. Kimple and Mr. Girt (tr. at 126, 255-56), the treatment plaintiff received from Redding Rancheria Indian Health Services (tr. at 198-231), plaintiff's testimony, and the third party statements of plaintiff's wife.

The court notes that the ALJ did not reject the opinions of treating and examining medical sources Dr. Kimple, Dr. Roux, Mr. Girt, and Dr. Hansen in favor of the opinions of other treating and examining medical sources.  Rather, the ALJ rejected the opinions of these treating and examining medical sources in favor of the opinions of non-treating, non-examining state

agency physicians who concluded that plaintiff was capable of performing light work.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Lester, 81 F.3d at 831 (emphasis in original). See also Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (holding that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence for rejecting the opinions of treating or examining physicians), and Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that the report of the nontreating, nonexamining doctor, even when combined with the ALJ's own observation of the claimant at the hearing, did not constitute substantial evidence and did not support the ALJ's decision to reject the examining physician's opinion that the claimant was disabled). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citations omitted).

Here, the opinions of the state agency physicians do not, by themselves, constitute substantial evidence justifying the ALJ's rejection of the opinions of Dr. Kimple, Dr. Roux, Certified Work Capacity Evaluator Girt and Dr. Hansen. The ALJ's assertions fail to establish a "specific and legitimate" or "clear and convincing" reason for rejecting the opinions at issue. In the absence of legitimate reasons supported by substantial evidence in the record, the court finds that plaintiff is entitled to summary judgment on his claim that the ALJ improperly rejected the opinions of the treating physician, the psychiatric consultative examiner, and the certified work capacity evaluator regarding plaintiff's functional limitations.

/////

/////

## II.  Whether the ALJ Erred in Rejecting Testimony and Third Party Statements

### A.  Plaintiff's Testimony

Once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). Indeed, "'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281. In evaluating a claimant's subjective testimony regarding pain and the severity of his symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285. However, absent affirmative evidence of malingering, the reasons for rejecting a claimant's testimony must be specific, clear and convincing. Lingenfelter v. Astrue, 504 F.3d 1023, 1035-36 (9th Cir. 2007); Smolen, 80 F.3d at 1281; Morgan, 169 F.3d at 599.

Questions of credibility and the resolution of conflicts in the testimony are usually deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. The determination of credibility is said to be a function of the ALJ acting on behalf of the Commissioner. Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). In general, an ALJ's assessment of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ may employ ordinary techniques of credibility evaluation and may take into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989). The ALJ cannot, however, substitute his or her own observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

In the present case, the ALJ found four medically determinable impairments that are severe: back pain, right leg radiculopathy, GERD, and depression. (Tr. at 19.) The ALJ

concluded "that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 24.) The ALJ acknowledged that plaintiff "has had numerous physical complaints and sees his physician on a regular basis," but stated that "the minimal clinical findings do not justify the claimant's contention that they keep him from working." (Tr. at 25.) The ALJ also conceded that plaintiff had received treatment for his back pain impairment but discounted the treatment as "essentially routine and conservative in nature." (Tr. at 25.) The ALJ deemed it significant that plaintiff had not been referred for trigger point injections or chiropractic treatment, although he did not cite any medical opinion suggesting that such referrals were appropriate or necessary in plaintiff's case. (Tr. at 25.) The ALJ emphasized that plaintiff was taking no prescribed medications at the time of the administrative hearing. (Tr. at 24-25.)

Plaintiff argues that the reasons articulated by the ALJ for not crediting plaintiff's subjective testimony are not legitimate because (1) minimal clinical findings are consistent with chronic pain syndrome, which Dr. Hansen assessed in 2004 (tr. at 160); (2) plaintiff's treatment was not exclusively "routine and conservative," as methadone was prescribed for his intractable pain, and he was treated with facet blocks, lumbar facet radio frequency procedures, biofeedback, use of a TENS unit, and chiropractic treatments; (3) plaintiff explained to his doctors that he did not use all of the Norco when it was prescribed because it made him feel depressed and "goofy" (tr. at 286-87), and he stopped taking his medications completely six months prior to the hearing because they ceased to be beneficial and he was trying to manage his pain with Tylenol, biofeedback, and the assistance of friends (tr. at 313).

The court finds that the primary reasons articulated by the ALJ for finding plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms "not entirely credible" are not convincing. When the opinions of Dr. Kimple, Dr. Roux, and Mr. Girt are properly credited and the entire record is considered, there are ample clinical findings to

1  support plaintiff's contention that his symptoms prevent him from working.  The record also
2  demonstrates that the treatment for plaintiff's back pain impairment was not merely "routine and
3  conservative."  There is no support in the record for finding that plaintiff's testimony was not
4  credible merely because no doctor referred him for trigger point injections.  Plaintiff's decisions
5  to stop taking prescription medications that were no longer effective and to attempt to manage his
6  pain instead with Tylenol, biofeedback, and the assistance of friends do not provide a legitimate
7  reason for finding plaintiff's statements about the limiting effects of his symptoms not credible.

8        Other miscellaneous reasons offered by the ALJ are even less convincing, such as
9  his confusing and conclusory statement that "Dr. Lupeika has not indicated that the claimant with
10  any limitations" (tr. at 25) and his emphasis on the fact that Dr. Featherstone, who appears to
11  have administered a few acupuncture treatments to plaintiff and treated him once in an
12  emergency, declined to complete a physical residual functional capacity assessment and did not
13  wish to comment on the report prepared by Mr. Girt, the physical therapist.

14        Finally, the ALJ's capsule description of plaintiff's daily activities – "[H]e takes
15  no prescribed medications.  He sleeps well 8-10 hours a night.  He spends the day reading and
16  watching TV.  His friends visit him every afternoon." – is remarkable for its complete disregard
17  of any limitation caused by plaintiff's symptoms, despite the finding that "claimant's medically
18  determinable impairments could reasonably be expected to produce the alleged symptoms."
19  With respect to a claimant's daily activities, it is well established that social security claimants
20  need not be "utterly incapacitated to be eligible for benefits."  Fair, 885 F.2d at 603.  See also
21  Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050
22  (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried
23  on certain daily activities, such as grocery shopping, driving a car, or limited walking for
24  exercise, does not in any way detract from her credibility as to her overall disability.").  In
25  general, the Commissioner does not consider "activities like taking care of yourself, household
26  tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial

gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e). The activities described by plaintiff at the administrative hearing and in his written statements do not detract from his credibility as to the intensity, persistence, and limiting effects of the pain from which he suffers.

In the absence of any evidence of malingering or any clear and convincing reason for finding plaintiff's statements not entirely credible, the court finds that plaintiff is entitled to summary judgment on his claim that the ALJ improperly rejected his testimony concerning his symptoms and the intensity, persistence, and limiting effects of pain.

### B. Third-Party Statements

Plaintiff's testimony was also corroborated by the statements of his wife. In a report dated August 28, 2005, Shannon Marie Dore provided a detailed report about plaintiff's abilities and limitations. (Tr. at 80-87.) Her statements, which were based on her own observations regarding plaintiff's impairments over many years, support plaintiff's testimony regarding the severe restrictions on his daily activities and abilities.

The Commissioner's own regulations provide that information from sources like spouses, other family members, friends, neighbors, and clergy may be used to show how a claimant's impairments affect his ability to work. 20 C.F.R. § 404.1513(d) & 416.913(d). See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Family members and other persons who see the claimant on a daily basis are particularly competent to testify as to their observations. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he must give reasons germane to that particular witness. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

Here, the statements of Shannon Dore should have been considered and discussed by the ALJ. Instead, the ALJ's decision contains no mention of her statements. The

ALJ's error in failing to consider and discuss Shannon Dore's statements is not harmless because her statements corroborated plaintiff's testimony, which the ALJ had rejected, and provided support for a different disability determination. See Robbins, 466 at 885; Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). The court finds that plaintiff is entitled to summary judgment on his claim of error arising from failure to consider competent third-party statements.

**III.   Whether the ALJ Erred in Assessing RFC and Posing a Hypothetical Question**

Plaintiff argues that the ALJ failed to properly assess his RFC and failed to pose an adequate hypothetical question to the vocational expert (VE), as a result of which the ALJ erroneously found plaintiff capable of performing his past relevant work as a school teacher, computer analyst, or tutor.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001). The Commissioner may satisfy his burden of showing that the claimant can perform past relevant work or other types of work in the national economy, given the claimant's age, education, and work experience, by applying the Medical-Vocational Guidelines, if appropriate, or by taking the testimony of a vocational expert. Burkhart, 856 F.2d at 1340; Polny v. Bowen, 864 F.2d 661, 663 (9th Cir. 1988).

Here, the court has determined that the ALJ improperly rejected the opinions of a treating physician, the psychiatric consultative examiner, and the certified work capacity evaluator and that the ALJ also improperly rejected plaintiff's testimony and the statements of plaintiff's wife regarding plaintiff's pain and functional limitations. As a result of all of these errors, the ALJ failed to base plaintiff's RFC upon the whole record and reached the erroneous conclusion that plaintiff has the RFC to perform the full range of light work, including past relevant work. If the rejected opinions, testimony, and third-party statements had been properly credited, additional impairment-related limitations would have been reflected in the RFC

16

assessment and in the hypothetical question posed to the VE who testified at the hearing. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (holding that the ALJ is required to question a vocational expert in a manner that properly takes into account the limitations on the plaintiff's abilities to engage in various work-related functions).

The hypothetical question posed by the ALJ described a person who (1) can sit for eight hours in an eight-hour day with normal breaks, with a sit/stand at will option but without leaving the work station; (2) can stand and walk six hours out of an eight-hour day with normal breaks and no prolonged walking or standing; (3) can stand or walk between 30 and 60 minutes at a time; (4) cannot climb ladders, ropes, or scaffolds; (5) can occasionally stoop, crouch, crawl, and kneel; and (6) has no other physical limitations.  (Tr. at 324-25.)  The VE testified that such a person could perform plaintiff's past relevant work as a teacher, tutor, and computer analyst.  (Tr. at 325.)  The VE added, however, that the sit/stand at will limitation would fall within the definition of a reasonable accommodation for most of the positions that fall within plaintiff's past relevant work.  (Tr. at 325-26.)

The Supreme Court has held that the standard in a Social Security case is whether an individual can perform a job as it is generally performed in the national economy, without taking into account the possibility of a reasonable accommodation.  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 803 (1999) ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI.").  Thus, based on the ALJ's own hypothetical and the VE's testimony, plaintiff would not be able to perform his past relevant work as generally performed.  Moreover, the hypothetical question does not include plaintiff's other limitations recognized by the opinions and testimony improperly rejected or overlooked by the ALJ, such as plaintiff's need to lie down during the day.

/////

1    When plaintiff's counsel in the administrative proceedings asked the VE about a
2 limitation based on a need to lie down during the day, the VE testified that a need to lie down on
3 more than a rare occasion would be inconsistent with being a classroom teacher. (Tr. at 327.)
4 Indeed, plaintiff testified that he was unable to work as a tutor on a part-time basis because of his
5 need to lie down. (Tr. at 315-17.) The attorney also asked the VE about breaks for sedentary,
6 unskilled jobs, and the VE responded that a person is entitled to a ten-minute break in the
7 morning, a ten-minute break in the afternoon, and a lunch break, but there is little leeway for
8 other breaks. (Tr. at 328.)

9    Plaintiff argues that if the ALJ had properly credited plaintiff's assessed
10 limitations and included them in his hypothetical, and if the ALJ had properly credited the VE's
11 answer to the attorney's questions including additional limitations, the ALJ would necessarily
12 have made a finding of disability. The court agrees. The ALJ's failure to credit the opinions of
13 Dr. Kimple, Dr. Roux, and Mr. Girt, the testimony given by plaintiff, and the third-party
14 statements of plaintiff's wife, as discussed supra, led to the erroneous exclusion of significant
15 limitations from the assessment of plaintiff's RFC and from the hypothetical question posed by
16 the ALJ to the VE. In addition, the ALJ did not include in the hypothetical any limitation
17 imposed by plaintiff's mental impairment. As a result, substantial evidence does not support the
18 ALJ's assessment that plaintiff is capable of performing the full range of light work and the
19 ALJ's finding that plaintiff capable of performing his past relevant work as a teacher, tutor, or
20 computer analyst. It is evident from the VE's testimony in response to counsel's hypothetical
21 question that, when the effects of chronic pain, a mental impairment, and a lie-down at will
22 provision are all considered, plaintiff cannot perform his past relevant work, is not capable of
23 performing any work on a sustained basis, and there are no jobs in the national economy that
24 plaintiff can perform.

25 /////

26 /////

**CONCLUSION**

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer, 908 F.2d at 506. The Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan, 246 F.3d at 1210; Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

Here, it is plain that no useful purpose would be served by further administrative proceedings. Plaintiff filed his applications for disability insurance benefits and supplemental security income five years ago. The record has been fully developed. The VE's answer to the hypothetical question posed by plaintiff's counsel affirmatively establishes that plaintiff is unable to perform his past relevant work or perform a significant range of light or sedentary jobs in the national economy. Had the ALJ based his decision on the VE's testimony in response to the hypothetical question posed by plaintiff's counsel or a hypothetical question that included the limitations required by the opinions, testimony, and statements erroneously rejected by the ALJ, the ALJ would have found plaintiff disabled as of the alleged onset date. See Lingenfelter, 504 F.3d 1041 (finding the claimant entitled to disability insurance benefits and supplemental security income where he needed to lie down two or three times each day for up to 45 minutes due to pain and where the vocational expert testified that there were no jobs available in the national economy in light of that limitation).

For these reasons, this matter will be remanded with the direction to award benefits on the ground that plaintiff was under a disability as defined by the Social Security Act on June 7, 2004. See Moore v. Comm'r of Soc. Sec. Admin, 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the

plaintiff's examining physicians); <u>Ghokassian</u>, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 18) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 24) is denied;

3. The decision of the Commissioner of Social Security is reversed; and

4. This case is remanded with the direction to award benefits.

DATED: July 30, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/dore3131.order